017810-000006

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| REBECCA FLEXTER, | ) | Case No. 2:15-CV-00754 |
| | ) | |
| Plaintiff, | ) | Judge George C. Smith |
| | ) | |
| vs. | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| ACTION TEMPORARY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**SECOND MOTION OF DEFENDANT ACTION TEMPORARY SERVICES, INC. FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S AMENDED INDIVIDUAL COMPLAINT**

Defendant, Action Temporary Services, Inc. dba Action Total Staffing ("ATS"), hereby moves this Court for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, finding as a matter of law, as follows:

1. That there is no genuine issue of material fact that ATS acted in good faith and with reasonable grounds and therefore liquidated damages are not proper; and

2. Finding that any alleged violations of the FLSA, or Ohio law, were not willful.

In support of this Motion, a Memorandum of Law is submitted herewith and attached hereto.

                                                                                Respectfully submitted,

                                                                        **LUPER NEIDENTHAL & LOGAN**
                                                                        A Legal Professional Association

                                                                        /s/ Melissa A. Izenson
                                                                        _____
                                                                        Melissa A. Izenson (0073212)
                                                                        *Trial Attorney for Defendant*
                                                                        Gregory H. Melick (0065694)
                                                                        50 West Broad Street, Suite 1200
                                                                        Columbus, OH 43215-3374
                                                                        (614) 221-7663; Fax: (866) 345-4948
                                                                        E-mail: MIzenson@LNLattorneys.com

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.  INTRODUCTION

Plaintiff Rebecca Flexter is a former hourly employee of Defendant Action Temporary Services, Inc. dba Action Total Staffing ("ATS") who worked as a traffic "flagger" on various construction projects.

On February 27, 2015, Plaintiff filed a Class and Collective Action Complaint against ATS (Doc. #1).  In her Complaint, Plaintiff alleged that ATS violated the FLSA and Ohio law[1], by not paying traffic flaggers for all of the hours they were suffered or permitted to work. Specifically, Plaintiff alleged that ATS "expected and required them to perform unpaid work before the start of their paid shifts, and to continue to work past the ending time of their paid shifts."  Plaintiff claims that flaggers were required to obtain and post signs and perform other set-up work before their shifts, and to gather and return the signs after their shifts and, in addition, were required to attend safety and training meetings for which they were not paid.

On March 25, 2016, the Court denied Plaintiff's motion for conditional certification of a putative class of "all current and former hourly employees who worked for Action Temporary Services, Inc. dba Action Total Staffing as flaggers during the period three years preceding the commencement of this action to the present." (Doc. 34, Order Denying Conditional Certification).  Thereafter, Plaintiff filed a Motion for Leave to file an Amended Complaint to add claims for breach of contract and unjust enrichment.  By Order dated June 9, 2016,

---

[1] The Ohio overtime Compensation statute, Ohio R.C. § 4111,03, et seq., "contains requirements identical to those in the FLSA and incorporates the procedures and standards contained therein."  *Kollstedt v. Princeton City Schools Bd. Of Educ.,* 2010 U.S. Dist. LEXIS 13522 (S.D. Ohio Feb. 17, 2010) (citation omitted).  "By virtue of R.C. 4111.03(A), Ohio defers to federal regulations and case law for the determination of eligibility for overtime compensation." Id.

Plaintiff's Motion was granted. (Doc. 41). Plaintiff's Amended Individual Complaint was filed June 9, 2016. (Doc. 42).

## II.     STATEMENT OF FACTS

ATS is a temporary staffing agency, and provides temporary staffing for office support, industrial, construction, professional, technical and financial positions. ATS has at times staffed traffic flaggers for various construction contractors in Ohio, including American Electric Power ("AEP"), Columbia Gas, and their subcontractors.

At all times relevant, ATS had a policy of requiring flaggers to report all hours worked on a timecard, which was to be signed by the flagger and the on-site supervisor, and submitted to the ATS office by noon on Monday for the previous week.

ATS paid its flaggers a generous regular hourly rate, and paid one and one half times the regular rate for all hours worked over forty (40) in a week, as required by law. "Hours worked" expressly included time to set up and take down the traffic signs, as well as any mandatory safety or training meetings. An after-hours call-in number was available for flaggers to call, and ATS office staff was available to address any problems flaggers may have had with their paychecks.

ATS paid its flaggers for all hours worked, including overtime. Indeed, ATS has submitted Declarations from twenty-four current and former employees who worked as flaggers for ATS, all confirming that they were properly paid. Their testimony is compelling.

Plaintiff nevertheless claims that she was not paid for set up work, closing work, and attendance at safety or training meetings. However, Plaintiff never reported any such "off the clock" work to ATS.

At all times relevant, Robin Vaughn was the ATS Office Manager, and then Director of Operations, starting in 2010. Her deposition testimony establishes that prior to 2015, ATS

employed approximately 40 to 50 flaggers per year.[2] Ms. Vaughn testified that ATS instructed its flaggers regarding filling out their time cards and that, if they did not put the time on their time cards, they would not get paid.[3] Flaggers were required to hand-write their time cards, sign them, have the on-site supervisor sign them, and then to submit the time cards to the ATS office, in order to get paid for their time.[4] In the event of a problem with a flagger's paycheck, the flagger was to come to the ATS office, and ATS would correct the error.[5] Ms. Vaughn testified that she never received any complaints that flaggers were being asked by anyone to sign time sheets that did not include all of their hours actually worked.[6] Ms. Vaughn further testified that no client of ATS ever questioned the number of hours billed by the flaggers, or whether any flaggers were being required to work off the clock.[7]

Plaintiff, Rebecca Flexter, testified that while working as a flagger for ATS, each ATS client company had its own policies and procedures for traffic flaggers. Some companies, like Columbia Gas, R&R Pipeline, and Newman Paving, put out their own signs.[8] On the other hand, "AEP paid you from the time you walked in their building to the time you walked out."[9] Ms. Flexter testified that she worked "off the clock" for MasTec and Pike Electric, but not for AEP, Columbia Gas, R&R Pipeline, or Newman Paving.[10] She testified that the "off the clock" work

---

[2] Deposition of Robin Vaughn, Doc. 38-1, filed April 29, 2016, pp 19.23- 20.1.

[3] Deposition of Robin Vaugh, pp 29.21 – 60.9.

[4] Declaration of Valerie Arbaugh, paras 7-9.

[5] Deposition of Robin Vaughn, pp. 65.20 – 66.18.

[6] Deposition of Robin Vaughn, pp 68.11- 68.15.

[7] Deposition of Robin Vaughn, pp. 74.10-74.15.

[8] Deposition of Rebecca Flexter, Doc. 23, filed Feb. 17, 2016, pp 99.18-100.6.

[9] Deposition of Rebecca Flexter, pp 100.15-17.

[10] Deposition of Rebecca Flexter, pp 99.18-100.23

4

consisted of setting up traffic signs 30 minutes before her shift, and taking them down for 30 minutes after her shift, and that she did not write the time on her time card.[11] During her deposition, Ms. Flexter reviewed her time cards, and testified to specific dates and times she alleges she worked "off the clock." With regard to each instance, Ms. Flexter was asked if she reported the "off the clock" work to anyone at ATS, and her response was always, "no", "I don't know," "I don't remember," or "I'm not sure."[12] When asked generally whether she ever reported to anyone at ATS that she was being asked by ATS client-companies to work hours and not report them on her time card, she vaguely testified:

> A. I'm not sure if I talked to Beth about it or if I talked to Robin about it. There was an incident in Mount Vernon where the foreman was having a fit. He made the statement that we were claiming more hours than his men and wanted us to take four hours less for the week. It was me and Bobby Stonerook. And we had to argue back and forth, we're the first ones here and we're the last ones to leave, and now you want us to give you what? And at that time we started taking less and less just to work.
>
> Q. Okay. But who at Action Temporary Services knew about that?
>
> A. I want to say it was either Beth or Robin. I don't know.[13]

Ms. Flexter was thereafter unable to provide any details of her alleged conversation with Beth or Robin regarding her "off the clock" work.

Former opt-in Plaintiff Paul Pitcock gave testimony that directly contradicted the testimony of Rebecca Flexter. In these regards, and whereas Ms. Flexter testified that Newman Paving put out their own signs and did not require the ATS flaggers to work off the clock, Mr.

---

[11] Deposition of Rebecca Flexter, pp. 43.10 -75.3.

[12] Deposition of Rebecca Flexter, pp. 45.19, 46.18, 48.13, 49.18, 50.7, 51.6, 52.3, 54.13, 57.5, 57.19, 58.8, 59.10, 59.23, 60.12

[13] Deposition of Rebecca Flexter, pp 29.9-30.1

Pitcock testified that Newman Paving required him to put up signs before the job started.[14] In addition, Mr. Pitcock testified that he <u>was</u> in fact paid overtime by ATS when he worked more than 40 hours per week.[15] When asked whether he reported any requests for off-the clock work to anyone at ATS, Mr. Pitcock testified, "I think I might have mentioned it a time or two."[16] Mr. Pitcock could recall no details of any such purported conversation, including the identity of the person he spoke with, or the timing of the conversation.

Valerie Arbaugh, the President and CEO of ATS, submitted a Declaration in support of Plaintiff's First Motion for Summary Judgment. (Doc. 25-1). In her Declaration, Ms. Arbaugh sets forth the affirmative steps taken by ATS to comply with the requirements of the FLSA. She keeps abreast of current FLSA requirements by reading publications and updates from Rea & Associates and The Business Journal, receiving counsel from her attorney and accountant, and attending conferences and seminars offered by various Chambers of Commerce. In addition, she states that ATS holds quarterly staff meetings to ensure that all in-house staff is aware of, and up to date regarding all company policies and procedures, including time keeping and overtime pay, and to ensure they are being followed. She also confirms that ATS keeps current labor law posters prominently displayed in the lobby of the office where all employees can see them.

According to Arbaugh, ATS communicated its policy (of requiring employees to report all hours actually worked and of paying one and one-half times the regular rate for all hours worked above forty per week), to all of its employees, including its traffic flaggers. This policy was communicated at the time of the initial interview verbally by the ATS staff member

---

[14] Deposition of Paul Pitcock, Doc. 24, filed Feb. 17, 2016, pp 16.3-5
[15] Deposition of Paul Pitcock, pp 24.1-6

[16] Deposition of Paul Pitcock, pp 17.20-24

conducting the interview.  Thereafter, when a flagger was given an assignment, the flagger was again advised on how to report his or her hours to ATS.

In addition, all ATS employees were required to sign an acknowledgment that they have read, understand, and agree to comply with, the ATS Employer/Employee Agreement, which specifically requires employees to report their hours to ATS and to report any problems with a job assignment to ATS staff.  According to Arbaugh, ATS maintained an after-hours telephone line for its employees to call with any questions or concerns regarding their pay.  Arbaugh states that any questions or concerns were handled by ATS promptly.  Any time a mistake was brought to the attention of ATS, ATS immediately rectified the situation for the employee.[17]  According to Arbaugh, neither Rebecca Flexter nor Paul Pitcock ever raised any issue regarding alleged "off the clock" work with ATS's office staff.[18]

Arbaugh's testimony is corroborated by no less than twenty-four (24) Declarations of current and former employees of ATS who worked as traffic flaggers and confirmed that they were always paid for all hours worked.[19]  For the sake of brevity, they will not all be referenced herein.  However, by way of a limited example:

1. Chris Baker: "While I had my employment with Action Total Staffing my pay was always accurate and never asked to do anything without turning in a time card or mileage."[20]

---

[17] Declaration of Valerie Arbaugh, Doc. 25-1, filed Feb. 17, 2016, para. 12.

[18] Declaration of Valerie Arbaugh, para. 13.

[19] The twenty-four Declarations are attached to Defendant's Memorandum in Opposition to Plaintiff's Motion for Conditional Certification and Court-Authorized Notice (Doc. #12), Defendant's Supplemental Declarations (Doc. # 14, Defendant's Second Supplemental Declarations (Doc. # 16), and Defendant's Third Supplemental Declarations (Doc. # 20).

[20] Declaration of Chris Baker, para 4.

2. Randall D. Bates: "I have been employed by Action Total Staffing for 4+ years. During this time, I do not recall being asked, ordered, nor expected to work "off the clock." Personally, I would have refused to do so and reported this to Action. I would not have returned to that particular job site. I have been assigned to job sites with AEP, Columbia Gas and a number of their contractors. I feel that I have been justly compensated for the duties I performed while on assignment through Action."[21]

3. Dana Godfrey: "During my employment with Action Total Staffing, I was never asked by the company or any supervisor to work "off the clock." I was compensated for my work as agreed. We were paid to set up and retrieve signs by some contractors, such as AEP, Pike Electric and Thayer Power. The gas companies such as Columbia Gas and Bill Hawk paid less per hour, but their employees would set signs for the work zone. Any other assistance would have been strictly voluntary not required by our employer. Arriving early to set up a work zone would also be at our convenience and not required."[22]

4. Karen Herron: "I have never been ask (sic) to work of (sic) the clock by ATS. I worked for ATS for 14 yrs. And never worked without getting paid for the full hours I worked."[23]

5. Lowell H. Smith: "I really enjoyed working for Action Temp. I never encountered working off the clock. I was asked to give safety meetings over the years while working there and was paid for my time. It was a great place to work. Everybody

---

[21] Declaration of Randall D. Bates, para. 4.

[22] Declaration of Dana Godfrey, para. 4.

[23] Declaration of Karen Herron, para. 4.

8

was always friendly and courteous. I would still be working for them except I got sick 2 ½ years ago and had to step out."[24]

Thus, ATS is entitled to judgment adjudicating that it has established a good-faith defense to Plaintiff's claims (limiting plaintiff's entitlement to liquidated damages) as a matter of law, and is also entitled to judgment adjudicating that its defense that any alleged violations of the FLSA were not willful (limiting the applicable statute of limitations to two years) has similarly been established as a matter of law.

## III. LEGAL ARGUMENT

For the sake of brevity, ATS does not include herein a recitation of the standards for granting or denying a motion for Summary Judgment under Fed. R. Civ.P. 56, as this Court is well-aware of those standards.

### a. **Plaintiff is Not Entitled to Liquidated Damages Because ATS Acted in Good Faith and with Reasonable Grounds for its Actions.**

In the event that a trier of fact finds that an employer violated the overtime provisions of the FLSA, the FLSA allows the court to impose liquidated damages against the employer in an amount equal to the amount of unpaid wages at issue, unless the employer has a "good faith defense." 29 U.S.C. § 216(b). Courts have discretion whether or not to award liquidated damages for violations of the FLSA, as well as discretion as to the amount of damages to be awarded:

> [If] the employer shows to the satisfaction of the Court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation . . . the court may, in its sound discretion, award no liquidated damages or award any amount thereof . . .

29 U.S.C. § 260. Whether liquidated damages are appropriate is a matter of law for a court, not a jury, to determine. *See, e.g., Brock v. Superior Care Inc.*, 840 F. 2d 1054, 1063 (2d Cir. 1988)

---

[24] Declaration of Lowell H. Smith, para. 4.

(*citing McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971) (holding that an award of liquidated damages under the FLSA is within the discretion of the district court).

"To prove that it acted in good faith, an employer must show that it took affirmative steps to ascertain the [FLSA's] requirements, but nonetheless violated its provisions." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004) (internal quotation marks and alteration omitted). "The employer has an affirmative duty to ascertain and meet the FLSA's requirements, and an employer who negligently [fails to do so] is not acting in good faith." *Id.*

In analyzing "good faith" for purposes of the FLSA, courts determine whether or not the employer provided adequate proof that it did not take an "ostrich-like" approach to the FLSA by "simply remain[ing] blissfully ignorant of FLSA requirements." *Garcia v. Frog Island Seafood, Inc.* 644 F. Supp. 2d 696, 712 (E.D.N.C. 2009) (citing *Roy v. County of Lexington,* 141 F.3d 544, 548 (4th Cir. 1998). Rather, an employer must take "active steps to ascertain the dictates of [the FLSA] and then move to comply with them." *Id*., at 713 (citing *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). See also *Barcellona v. Tiffany English Pub*, Inc. 597 F.2d 464, 469 (5th Cir. 1979) (good faith requires some duty to investigate potential liability under the FLSA); *Chao v. First Nat'l Lending Corp.*, 516 F. Supp. 2d 895, 902-903 (N.D. Ohio 2006) (to prove good faith, employer must show it took affirmative steps to ascertain FLSA's requirements). "The good faith component of the test is subjective, and the reasonable grounds component is objective." *Garcia v. SAR Food of Ohio, Inc.*, Case No. 1:14-CV-01514, 2015 U.S. Dist. LEXIS 87296, at *18 (N.D. Ohio, July 6, 2015).

In *Garcia v. SAR Food of Ohio, Inc., supra*, the District Court granted the employer's motion for partial summary judgment as to its good-faith defense. The Court reasoned that summary judgment in favor of the employer, SAR Foods, was appropriate because:

10

> Defendant SAR Food took affirmative steps to comply with FLSA requirements. Defendant SAR Food established a system for reporting unscheduled overtime that numerous and uncontested declarations say that many employees actually used. Defendant SAR Food also set up a call in number for employees who had questions about their paychecks, and published the number on all paystubs. And Defendant SAR Food had an employee in charge of maintaining FLSA compliance, including by staying aware of new developments in FLSA law.
>
> Moreover, it was objectively reasonable for Defendant SAR Food to conclude that its system led to FLSA compliance. Particularly because other employees routinely used the modification system and because Plaintiff Garcia and Sutton admit that they failed to use this procedure or otherwise raise the issue, it was not objectively unreasonable for Defendant SAR Food to believe it was paying Plaintiffs everything they were due under the FLSA.

*Garcia v. SAR Food of Ohio, Inc., supra*, at *19

      Here, the undisputed evidence demonstrates that ATS, like SAR Food, acted in good faith and with reasonable grounds with regard to its FLSA compliance efforts. Valerie Arbaugh has testified by Declaration as to the affirmative steps taken by ATS to comply with the requirements of the FLSA. Specifically, Ms. Arbaugh, personally keeps abreast of current FLSA requirements by reading publications and updates, such as from Rea & Associates and The Business Journal, receiving counsel from her attorney and accountant, attending conferences and seminars offered by various Chambers of Commerce. In addition, ATS holds quarterly staff meetings to ensure that all in-house staff is aware and up to date regarding policies and procedures and to ensure they are being followed. Moreover, ATS keeps current labor law posters prominently displayed in the lobby of the office, where all employees can see them, as required by law.

      Ms. Arbaugh's Declaration establishes that ATS communicated its policy (of requiring employees to report all hours actually worked and of paying one and one-half times the regular rate for all hours worked above forty per week) to all of its employees, including its flaggers. This policy was communicated to ATS' employees at the time of the initial interview verbally by

the ATS staff member conducting the interview. Thereafter, when a flagger was given an assignment, that flagger was again advised on how to report his or her hours to ATS. No less than **twenty-four** Declarations of current and former ATS flaggers establish that this policy was generally known by ATS' employees.

In addition, all employees were required to sign an acknowledgment that they have read, understand, and agree to comply with, the ATS Employer/Employee Agreement, which specifically requires employees to report their hours to ATS, and to report any problems with a job assignment to ATS staff. According to Arbaugh, ATS maintained an after-hours telephone line for its employees to call with any questions or concerns regarding their pay. Any and all questions or concerns were handled by ATS promptly. Any time a mistake was brought to the attention of ATS, ATS immediately rectified the situation for the employee.[25] Neither Rebecca Flexter nor Paul Pitcock <u>ever</u> raised any issue regarding alleged "off the clock" work with ATS's office staff.[26]

Subjectively, ATS did not take an "ostrich-like" approach to the FLSA, but instead took active steps to ascertain the requirements of the FLSA, and then to move to comply with them. Moreover, ATS's belief that its policies and procedures complied with the FLSA was objectively reasonable. Plaintiffs cannot establish that ATS did <u>not</u> take reasonable measures to comply with the FLSA. As such, partial summary judgment is appropriate in favor of ATS, adjudicating that Plaintiffs are <u>not</u> entitled to liquidated damages in this case.

### b. Any Purported Violations of the FLSA by ATS were not Willful, and Therefore the Applicable Statute of Limitations is Two Years.

---

[25] Declaration of Valerie Arbaugh, para. 12.

[26] Declaration of Valerie Arbaugh, para. 13.

ATS is also entitled to partial summary judgment that its conduct was not "willful," as defined by the FLSA. *Dole v. Elliott Travel & Tours, Inc*. 942 F.2d 962, 967 (6th Cir. 1991).

If an employer "willfully" violates the FLSA, the statute of limitations applicable to such violation is three years, but if the violation is not "willful," the limitation period is only two years. *Herman v. Palo Grp. Foster Home, Inc.* 183 F.3d 468, 473-74 (6th Cir. 1999) (citing 29 U.S.C. § 255(a)). The plaintiff has the burden of proving "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). For purposes of the FLSA, "willful" is synonymous with "voluntary," "deliberate," and "intentional," and is "generally understood to refer to conduct that is not merely negligent." *Id*. The question of willfulness is a matter of law to be determined by the court. *See Herman*, 183 F.3d at 472.

Under federal law, to establish willfulness, the plaintiff must demonstrate that the employer either <u>knew</u> or showed <u>reckless disregard</u> for whether its conduct violated the FLSA. *See McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133, 100 L. Ed. 2d 115, 108 S. Ct. 1677 (1988) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 83 L. Ed. 2d 523, 105 S. Ct. 613 (1985)). For example, the Sixth Circuit has found that an employer's violation was willful where the employer "'had actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA.'" *Herman v. Palo Group Foster Home, Inc.*, *supra*, at 474 (quoting *Dole v. Elliott Travel & Tours, Inc*., 942 F.2d 962, 967 (6th Cir. 1991) (citing *Brock v. Superior Care, Inc*., 840 F.2d 1054, 1062 (2d Cir. 1988)). A willful violation requires that the employer acted recklessly, at least; it is not sufficient that the employer acted unreasonably. *McLaughlin*, 486

U.S. at 135 n. 13. See also *Stultz v. J.B. Hunt Transp., Inc.*, 35 F. Supp. 3d 866, 878-879 (E.D. Mich. 2014); *Claeys v. Gandalf Ltd.*, 303 F. Supp. 2d 890, 893-894 (S.D. Ohio 2004).

Here, there is no evidence that any alleged violation of the FLSA was in bad faith, much less "willful." To the contrary, the record evidence establishes that ATS implemented several measures to ensure that no employees' rights under the FLSA were violated. In addition to its employment policies, staff meetings, and continuous updates regarding the FLSA, ATS provided all employees, including Plaintiff, with the ability to report any and all questions or concerns they may have directly to ATS, and such questions were addressed and resolved promptly. Simply put, ATS did not willfully violate the FLSA.

Because there is no genuine issue of material fact that ATS did not willfully violate the FLSA, the applicable statute of limitations should be limited to two years.

## IV. CONCLUSION

For all of the foregoing reasons, ATS is entitled to partial summary judgment as a matter of law with respect to its good-faith defense to Plaintiffs' claims, finding that liquidated damages are not appropriate in this case. In addition, ATS is entitled to partial summary judgment finding that any purported violations of the FLSA were not willful.

Respectfully submitted,

**LUPER NEIDENTHAL & LOGAN**
A Legal Professional Association

/s/ Melissa A. Izenson
_____
Melissa A. Izenson (0073212)
*Trial Attorney for Defendant*
Gregory H. Melick (0065694)
50 West Broad Street, Suite 1200
Columbus, OH 43215-3374
(614) 221-7663; Fax: (866) 345-4948
E-mail: MIzenson@LNLattorneys.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 12th day of September, 2016 a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's ECF/CM system to those parties registered to receive such electronic notice.

/s/ Melissa A. Izenson
_____
Melissa A. Izenson (0073212)